Dennis JAMES, Plaintiff,

v.

NEW YORK RACING ASSOCIATION, New York State Racing & Wagering Board, Defendants.

No. 97–CV–7180(ILG).

United States District Court, E.D. New York.

Nov. 22, 1999.

---

Raymond Nardo, Law Office of Raymond Nardo, Mineola, NY, for plaintiff.

John Russo, Jamaica, NY, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiff Dennis James ("James") commenced an employment discrimination action against defendants New York Racing Association ("NYRA") and New York State Racing & Wagering Board, claiming that they illegally terminated his employment because of his age. He has brought a variety of claims against defendants under federal, state and local anti-discrimination statutes, including the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"). The NYRA now moves for summary judgment.

### BACKGROUND

NYRA is a private stock corporation organized in 1955, and existing as a nonprofit racing association pursuant to Section 202 of the New York Racing, Pari–Mutuel Wagering and Breeding Law, McKinney 1984 & Supp.1998 ("Racing Law"). It is franchised by the New York State Racing and Wagering Board ("Racing Board") under Section 208 of the Racing Law. Noe Aff. ¶ 2. The NYRA conducts thoroughbred horse races and offers pari-mutuel wagering on the racing events. *Id.* It owns and operates three racetracks: Aqueduct, Belmont, and Saratoga. *Id.* Pursuant to Section 208(10) of the Racing Law, NYRA is legislatively required to "... take such step as are necessary to ensure that it operates in a sound, economical, efficient and effective manner so as to produce a reasonable revenue for the support of government." *Id.* ¶ 3.

Plaintiff was hired by NYRA as Assistant Security Director in 1989, when he was 52 years old. Cartagine Aff. ¶ 7. His job duties included assisting the Director of Security, directing the functions of the Security Operations and Parking Division, supervising the performance of security employees, determining appropriate staff-

ing levels, purchasing uniforms, preparing budgets, reducing manpower costs, and administering the Barn Area Violations Panel. Nardo Aff. Ex. 8.

In November 1994, NYRA appointed 66 year-old Kenny Noe, Jr. as its President and General Manager, later naming him Chairman of its Board of Trustees. Noe Aff. ¶ 1; Cartagine Aff. ¶ 2. At that time, the NYRA was in serious financial difficulties, due to a steady decline in revenue and attendance at its racetracks. Noe Aff. ¶ 4; Cartagine Aff. ¶ 2. In response to this situation, and in accordance with the statutory requirement that the NYRA operates in a "sound, economical and efficient" manner, Mr. Noe initiated a corporate reorganization and downsizing program that significantly reduced the number of NYRA employees over the following two-year period. Noe Aff. ¶ 5; Cartagine Aff. ¶ 4.

As an initial step, NYRA cut back its racing schedule from six days to five days per week, effective December 7, 1994. Noe ¶ 5; Cartagine Aff. ¶ 3. Among other savings, this change enabled NYRA to reorganize and considerably reduce the size of its administrative staff. Mr. Noe began this process in late November, 1994, by asking every administrative department head to submit a complete listing of personnel in his department, including positions, salaries, anticipated overtime, and "justification of any excess personnel." Noe Aff. ¶ 5, Ex. A.

On December 16, 1994, Mr. Noe announced the reorganization to all administrative personnel. *Id.* ¶ 6, Ex. B. As part of its reorganization, NYRA offered pension incentives to eligible employees in the Administrative, Racing Mutuel, and Admission Departments who were willing to accept voluntary retirement. *Id.* ¶ 8, Ex. B; Cartagine Aff. ¶ 3. The purpose of the incentive plan was to reduce the necessity for layoffs. Noe Aff. ¶ 8, Ex. B. Involuntary terminations of administrative employees began in late1994. Cartagine Aff. ¶ 5. Overall, there were 33 terminations or voluntary retirements of administrative

personnel in 1994, 79 in 1995, and 50 in 1996. *Id.* By the end of 1996, NYRA had achieved an eleven percent reduction in its workforce and reduced its administrative payroll by nearly six million dollars per year, representing a savings of 12.5 percent. *Id.* ¶ 4.

Robert Kibbey, at the age of 67, was hired by Mr. Noe as NYRA's Security Director in 1995. Noe Aff. ¶ 11; Cartagine Aff. ¶ 7. Also in 1995, when plaintiff was 58 years old, he assumed the additional duties of supervising the Investigations Department at NYRA. James Dep. 7, 48. To recognize these additional responsibilities, Mr. Noe gave plaintiff a 30 percent pay increase and authorized him to use a company car. Noe Aff. ¶ 10, Ex. E; James Dep. 42–44, 47–48.

In October 1996, plaintiff's employment was terminated. He was 59 years of age at that time. According to the NYRA, plaintiff was terminated as part of its across-the-board downsizing, and plaintiff was one of seven administrative employees in the Security Department whose employment was involuntarily terminated in that year. Cartagine ¶ 6, Ex. A. Noe is alleged to have told plaintiff that NYRA was "going in a different direction." James Dep. 115. Age was not mentioned as a reason for the termination. James Dep. 126. Plaintiff's personnel files lists "downsizing" as the reason for his termination. Cartagine Aff. Ex. B.

Eight months prior to plaintiff's termination, in early 1996, Mr. Kibbey said to James "that the Security Department had too many supervisors and that some of the older supervisors needed to retire." James Dep. 53.

One week after plaintiff was terminated, defendant hired 42–year–old John Tierney as Assistant to the Director of Security. Nardo Aff. Exs. 9, 10. Plaintiff claims that NYRA *replaced* plaintiff with the younger Mr. Tierney, an assertion that NYRA vigorously denies. Plaintiff also asserts that, after Noe and Kibbey as-

sumed leadership positions at NYRA, a pattern of dismissing older employees developed, and that he was one of many victims of age discrimination.

## DISCUSSION

### I Standard for Summary Judgment

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proof on such motion. *See United States v. All Funds*, 832 F.Supp. 542, 550–51 (E.D.N.Y.1993).

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry, et al.*, 77 F.3d 34, 36 (2d Cir.1996).

■ In employment discrimination cases, courts are particularly cautious about granting summary judgment where intent is at issue. *See Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir.1997). However, even in these cases a "plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.*

■ In order to survive a motion for summary judgment on a cause of action for age discrimination, a plaintiff must either produce "direct evidence" of discrimination, or establish discrimination in violation of the ADEA by inference through the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine;* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Hawkins v. Astor Home for Children*, No. 96 Civ. 8778(SS), 1998 WL 142134, at *3 (S.D.N.Y. March 25, 1998) Here, plaintiff has submitted no direct evidence of discrimination nor has he provided the Court with evidence from which a discriminatory intent may be inferred.

■ Examples of "direct evidence" are "policy documents and evidence of statements or actions by decisionmakers that may be viewed as directly reflecting the alleged discriminatory attitude." *Id.* (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 60–61 (2d Cir.1997)) (additional citation omitted). To establish a prima facie case of age discrimination under a *McDonnell Douglas* analysis, plaintiff must show that: (1) he was within the protected age group, (2) his job performance was satisfactory, (3) he was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *See Grady v. Affiliated Central,* Inc., 130 F.3d 553, 559 (2d Cir.1997). Only if plaintiff adduces evidence sufficient to establish a *prima facie* case does the burden then shift to the defendant to produce, "through the introduction of admissible ev-

idence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993)) (internal quotation marks and emphasis omitted). If defendant is able to articulate an age-neutral reason for plaintiff's discharge, "the presumption of discrimination raised by the prima facie case drops out of the picture." *Id.* at 559–60 (citations and quotations omitted). To defeat a motion for summary judgment, plaintiff must then "present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by age discrimination." *Id.* at 560 (citations omitted).

## II  *Plaintiff's Case of Discrimination*

### A.  *The Alleged Replacement of Plaintiff with Tierney*

■ Plaintiff asserts that the circumstances surrounding the hiring of 42–year-old John Tierney suggest that plaintiff was a victim of age discrimination, in that plaintiff was fired and then replaced with a younger man. To support this assertion, plaintiff points out that Tierney was hired one week after plaintiff was fired. Nardo Aff. Exs. 9, 10. James and Tierney both reported directly to Kibbey. Nardo Aff. Ex. 10, ¶ 4, 8. There is no dispute that Tierney's duties included many of the same duties that were part of plaintiff's job. Both occupied the same office and had the same secretary. Nardo Aff. Ex. 10, ¶ 3, 5, 6, 7; Tierney Dep. 24–26; Kibbey Dep. 33. Defendant responds that plaintiff and Mr. Tierney did have some parallel duties, but the positions they occupied were far from identical. According to NYRA, some of plaintiff's former duties were reassigned to other members of the Security Department, including plaintiff's 67 year-old boss, Mr. Kibbey.

■ The fact that a protected employee is terminated and subsequently replaced by a younger employee can raise a *prima facie* case for discrimination. *See Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 105 (2d Cir.1989). However, "the inference of discrimination is much weaker where the plaintiff employee is well within the protected class when first hired." *O'Connor v. Viacom Inc.,* No. 93 Civ. 2399, 1996 WL 194299, at *7 (S.D.N.Y. Apr. 23, 1996) *aff'd,* 104 F.3d 356 (2d Cir. 1996); *Melnyk v. Adria Laboratories,* 799 F.Supp. 301, 319 (W.D.N.Y.1992) ("[I]t is difficult to justify a conclusion of age discrimination when [an employer] hired [plaintiff] just one year prior to her entry into the protected class.") NYRA hired plaintiff when he was 52 years old, and promoted him and gave him a generous pay raise when he was 58, suggesting that age discrimination played no role in the later termination decision.

■ Although defendant denies it is the case, even if Mr. Tierney was plaintiff's direct and only successor, that would not raise a triable issue because "the replacement of an older worker with a younger worker or workers does not itself prove discrimination." *Fagan v. New York State Electric & Gas Corp.,* 186 F.3d 127, 134 (2d Cir.1999) (affirming summary judgment for defendant); *accord O'Sullivan v. New York Times* 37 F.Supp.2d 307, 319 (S.D.N.Y.1999). In *Coleman v. Prudential Relocation,* 975 F.Supp. 234, 242 (W.D.N.Y.1997), the court wrote:

> If plaintiff's case could survive a summary judgment motion merely because her duties were assumed by a younger person, that would mean that eventually every employee over forty years old [who was terminated and whose duties were assigned to someone younger] could state an age claim that would withstand summary judgment. Such a holding would be tantamount to saying that a *prima facie* case would always suffice to raise issues of fact about the truth of the employer's proffered reason, which

would render the *McDonnell Douglas/Burdine* analysis pointless (alteration in original) (citations omitted).

■ Assuming plaintiff were able to establish a *prima facie* case, NYRA has articulated a legitimate reason for plaintiff's termination. Many NYRA employees lost their jobs as part of a significant downsizing necessitated by a downturn in its business. James and dozens of other employees were terminated because NYRA was reducing its workforce throughout its administrative departments. The executive who ordered that downsizing made no reference to plaintiff's age when he discharged him or at any time prior to his discharge. No one at the NYRA told plaintiff that he was too old to work there or suggested that he retire. A *bona fide* reduction in workforce is a legitimate nondiscriminatory reason for terminating an employee. *See Parcinski v. Outlet Co.,* 673 F.2d 34, 36 (2d Cir.1982) ("The Act does not forbid essential corporate belt-tightening having no discriminatory motivation.") *cert. denied,* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983); *Morser v. AT & T Information Systems,* 715 F.Supp. 516 (S.D.N.Y.1989) (no evidence of age discrimination in the midst of an overall reduction in workforce).

## B. Defendant's Alleged Pattern of Discriminatory Conduct

■ Plaintiff alleges that 66–year–old Mr. Noe and 67–year–old Mr. Kibbey "consistently terminated older employees" and thereby engaged in a pattern of discrimination. Pl. Br. at 4–5. In support of this allegation, plaintiff points out that two security officers (64–year–old Richard Phillips and 54–year–old Sherman Jetton) were allegedly replaced with younger employees.

First, as stated above, the replacement of an older worker with a younger worker or workers does not itself prove discrimination. Second, the affidavits of two employees, who were dismissed during a period of considerable downsizing at NYRA,

do not demonstrate any pattern of discrimination or suggest that plaintiff was dismissed on account of his age.

## C. Defendant's Alleged Discriminatory Comments

■ Plaintiff asserts that Noe and Kibbey made several age based remarks that allegedly demonstrate their bias towards older employees. Mr. Kibbey, who was not NYRA's primary decision-maker with regard to employment matters, made a comment eight months before plaintiff's discharge to the effect that the Security Department had "too many supervisors and that some of the older supervisors needed to retire." James Dep. 53, 97. This comment merely recognizes the economic realities of retaining older workers and does not support any inference of discrimination. "The ADEA does not prohibit an employer from acting out of concern for excessive costs, even if they arise from age-related facts—such as that employees with long seniority command a higher salary and benefits expensive [sic] than new hires." *Woroski v. Nashua Corp.,* 31 F.3d 105, 109 at n. 2 (2d Cir.1994); *see also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 1706–07, 123 L.Ed.2d 338 (1993).

■ In the same way, the existence of the retirement inducement package offered by NYRA is not evidence of age discrimination. The ADEA creates a safe harbor for voluntary early retirement plans that are "consistent with the relevant purpose or purposes" of the ADEA, and the implementation of such as plan by an employer cannot serve as evidence of unlawful age discrimination. *Fagan,* 186 F.3d at 133 (quoting 29 U.S.C. § 623(f)(2)(B)(ii)). Such plans are accurately perceived not as a sign of discrimination, but as a benefit to the recipient. *Fagan,* 186 F.3d 127 (defendant expressing his pleasure with reducing the number of officers who were older than 55 years of age was held to be irrelevant to an ADEA

action because defendant was merely pleased that a lawful plan was having its lawful desired effect, and did not suggest animus against older employees).

■ Mr. Tierney testified that Mr. Kibbey had told him that NYRA "had a lot of older people working for us." Tierney Dep. 36. This innocuous phrase does not raise any inference of discriminatory intent. Mr. Noe also told another employee that he wanted to save NYRA for the "younger guys, so [they] could have a job in the future." Verdi Dep. 32. This only demonstrates that Mr. Noe was committed to improving NYRA's situation to ensure that NYRA would be around to provide jobs to people in the future. There is no suggestion of any unlawful intent.

As further support for plaintiff's allegation that age discrimination existed at NYRA, plaintiff asserts that "Sergeant Petruzzelli testified that he heard age-based jokes at NYRA." Pl. Br. 6 at n. 2. However, Mr. Petruzzelli's deposition transcript reads quite differently:

Q: Did you ever hear any derogatory comments about your age while working at the track?

A: Just kidding around.

Q: Do you know who made those comments?

A: A lot of people.

Q: Can you name any of them?

A: The Captain that I work with now is my age. We kid around with each other. He is the sixty-two or sixty-three and I'm sixty-five. We talk about retirement and Social Security and kid around about our age.

Q: Other than that captain, do you recall anyone else?

A: Not really, no.

Petruzzelli Dep. 27. This does not support any allegation of age bias.

■ Finally, when he terminated Jetton, Mr. Noe said that he hired a "young man" to replace him. Nardo Aff. Ex. 13. Again, this statement is too incidental and generic to warrant any consideration. None of these statements raises a *prima facie* case of discrimination.

On the contrary, the undisputed facts convincingly bespeak age indifference. The plaintiff was hired when he was 52. He was given a raise, a company car, and increased responsibilities when he was 58. "It would do a disservice to the goals that our antidiscrimination laws are designed to foster if we did not give substantial weight to the fact that [defendant] hired [plaintiff] [at the age of 59] with full knowledge of his age . . ." *Browne v. CNN America, Inc.,* 98 Civ. 1768(JSM), 1999 WL 1043770 (November 16, 1999). Mr. Noe was hired as President and General Manager of NYRA when he was 66. Mr. Kibbey was hired when he was 67. The plaintiff was allegedly replaced by Mr. Tierney, a member of the protected class—*Res Ipsa Loquitur.*

### III  *Plaintiff's State Law Claims*

Plaintiff asserts that the termination of his employment violates the New York State Human Rights Law (New York, Exec. Law Sec. 290 *et seq.*) and the New York City Human Rights Law (Title 8 of the Administrative Code of the City of New York). Plaintiff's pendent state claims cannot proceed because the District Court's subject matter jurisdiction is based upon an unsustainable federal claim, and this Court declines to exercise supplemental jurisdiction. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867 (2nd Cir.1998)

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted.

SO ORDERED.